**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| University of Chicago, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 06 C 3452 | |
| -vs- | ) | | |
| | ) | Senior U.S. District Judge | |
| | ) | GEORGE W. LINDBERG | |
| United States of America, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM AND ORDER**

Plaintiff, The University of Chicago, filed a complaint against defendant, the United States of America, seeking a refund of amounts plaintiff claims were erroneously collected by defendant pursuant to the Federal Insurance Contributions Act. (FICA). The parties have filed cross-motions for summary judgment. See FRCP 56.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(b). When the parties file cross-motions for summary judgment, each party's motion must be evaluated on its own merits. Liberty Mutual Insurance Co. v American Home Assurance Co., 348 F Supp 2d 940, 951 (ND Ill 2004). The court must view the evidence making all reasonable inferences in favor of the nonmoving party. Anderson v Liberty Lobby, Inc., 477 US 242, 255 (1986). The movant bears the initial burden of demonstrating that no material factual issue exists for trial. Celotex Corp. v Catrett, 477 US 317, 330 (1986). Once the movant has properly supported its motion, the non-moving party must offer specific facts demonstrating that a material dispute indeed exists. Id at 331. "The non-moving party . . . may not rest upon mere denials or allegations in the pleadings,

but must set forth specific facts sufficient to raise a genuine issue for trial." Weicherding v Riegel, 160 F3d 1139, 1142 (7th Cir 1998). A mere scintilla of evidence is not sufficient to defeat a proper motion for summary judgment. Anderson, 477 US at 245.

The facts are not in dispute and may be stated very briefly. Plaintiff has for many years required eligible employees to participate in one of two retirement plans plain established by plaintiff, the Retirement Income Plan for Employees (ERIP) or the Contributory Retirement Plan (CRP). Under either plan, an employee is required to contribute a fixed portion of the employee's salary and plaintiff also makes contributions in order to fund the purchase of a non-transferable retirement annuity contract. The plans refer to the employees' contributions as being "withheld from their salaries," and employees are required to sign a "salary reduction agreement." During the years 2000 through 2003, plaintiff did not report, pay, or withhold pursuant to FICA taxes on amounts employees contributed to purchase their retirement annuity contracts. On May 13, 2005, defendant made assessments against plaintiff for unpaid employment taxes, failure to deposit penalties, and interest for all four quarters of the years 2000 through 2003. Notice of these assessments and demand for their payment were sent to plaintiff on that same date. On March 3, 2006, plaintiff sent the IRS Forms 843, Claims for Refund and Abatement, for each of the quarters 2000 through 2003. The dispute between the parties is essentially that defendant contends the employees' contributions to their retirement annuities are taxable, and that plaintiff owes taxes, interest, and penalties on the amounts of these employee retirement annuity contributions, and plaintiff contends those employee contributions are not taxable.

06 C 3452

The statute which determines the taxability of the employee contributions at issue provides:

> (a) For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash, except that such term shall not include–
>
> . . . .
>
> (5) Any payment made to, or on behalf of, an employee or his beneficiary–
>
> . . . .
>
> (D) Under or to an annuity contract described in §403(b), other than a payment for the purchase of such contract which is made by reason of a salary reduction agreement (whether evidenced by a written agreement or otherwise).

26 USC § 3121(a)(5)(D). Thus, the general rule is that all remuneration for employment is included within the term wages, and so is taxable. See 26 USC § 3121(a). Plaintiff's position is that the contributions of its employees to their retirement plans fall under the exception to this general rule for annuity contracts described in § 403(b), which would take the employee contributions out of the definition of wages, and so would make them non-taxable. See 25 USC § 3121(a)(5)(D). Defendant's position is that the contributions of the employees to their pension plans fall within the exception to that exception as they were a payments for the purchase of annuity contracts made by reason of salary reduction agreements, which would bring those contributions under the definition of wages, and so those contributions would be taxable. See 25 USC § 3121(a)((5)(D).

On their face, both ERIP and CRP require each employee to accept a reduction in his or her salary, which is then used to fund the purchase of an annuity contract. In other words, both

3

plans fall squarely within the terms of the exception to the exception described above, and so the employees' contributions under them would be taxable wages. Plaintiff, however, argues that the contributions were not made by reason of a salary reduction agreement.

In furtherance of this argument, plaintiff first argues that the statute is ambiguous because the phrase "made by reason of a salary reduction agreement" does not have a plain meaning. Plaintiff argues that every employee compensation package has two components: current compensation and future or deferred compensation. Anything that increases the deferred compensation component will have the effect of reducing the amount of current compensation the employer can pay. Since Congress could not have meant the language "made by reason of a salary reduction agreement" to include every agreement between an employer and an employee that has the effect of reducing current compensation, this language does not have a plain meaning. Plaintiff's solution is to interpret the statute to apply only to individually negotiated salary reduction agreements.

This court disagrees. The statute's language is not at all ambiguous, and covers just the set of facts that are present in this case. What plaintiff's argument most fundamentally misses is that it is a "salary reduction agreement" and not an agreement that has the effect of reducing salary that brings an employee's contributions within the definition of wages. In the present case, the employer required its employees to explicitly agree to a reduction in salary to provide part of the funding for their pension plans. Moreover, if it had been Congress's intent that the statute apply only to individually negotiated salary reduction agreements, it would have been a simple matter for Congress to have added the words "individually negotiated" to the statute.


06 C 3452

Thus, 26 USC § 3121(a)(5)(D)'s phrase "salary reduction agreement" is not ambiguous, and includes the agreements in this case. See Public Transportation Retirement Board v Shalala, 153 F2d 1160, 1165 (10th Cir 1998) (interpreting a different provision of the Internal Revenue Code the court held that a salary reduction agreed to as a condition of employment constitutes a salary reduction agreement because "the employee has 'agreed' to the salary reduction by continuing employment.").

Both parties cite to the Internal Revenue Service's Revenue Ruling 65-208, which was in effect codified by Congress in the current version of Section 3121(a)(5)(D). That ruling held:

> Accordingly, it is held that . . . the amounts used by the organization pursuant to the salary reduction agreement to purchase the annuity for the employee are "wages" for purposes of the Federal Insurance Contributions Act . . . .

Rev Rul 65-208. Plaintiff believes that the Revenue Ruling's use of the singular in referring to the employee means that salary reduction agreements must be individually negotiated. Plaintiff is giving more weight to the use of the singular than it warrants. There is no language in this revenue ruling that would limit its coverage to individually negotiated agreements. In fact, the distinction that was being drawn in the ruling was between annuity purchase funds that come from employee contributions and those that come from employer contributions. See Canisius College v US, 799 F2d 18 (2d Cir 1986); Temple University v US, 769 F2d 126 (3d Cir 1985). Therefore, Revenue Ruling 65-208 does not undermine this court's conclusions that the statutory language at issue has a plain meaning and that the employee contributions in this case were taxable wages.

Plaintiff contends that a Treasury Regulation that was in effect until 2005 supports its

06 C 3452

contention that the statute at issue does not have a plain meaning. The language at issue comes from former Treasury Regulation § 31.312(a)(2)-1(d), and stated:

> (d) it is immaterial for purposes for this exclusion whether the amount or possibility of such benefit payments is taken into consideration in fixing the amount of an employee's remuneration or whether such payments are required, expressly or impliedly, by the contract of service.

This regulation had to do with the materiality of whether the amount or possibility of benefit payments were taken into consideration in fixing an employee's remuneration. It did not have to do with the materiality of whether contributions made to fund an annuity that would make those benefit payments came from the employer or employee. Thus, this former Treasury Regulation does not undermine this court's conclusions that the statutory language at issue has a plain meaning and that the employee contributions in this case were taxable wages.

Plaintiff spends a considerable number of pages discussing the legislative history of 26 USC § 3121(a)(5)(D). However:

> Today's Supreme Court uses legislative history only to resolve ambiguities in enacted texts. Even the plainest legislative history does not justify going against an unambiguous enactment. See Arlington Central School District v. Murphy, . . . , 126 S.Ct. 2455, 2459, . . . (2006); Exxon Mobil Corp. v. Allapattah Services, Inc., . . . , 125 S.Ct. 2611, 2625-27, . . . (2005). (Nor does explicit legislative history justify the creation of a legal rule on a subject about which the statute is silent. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005).) And if legislative history directly addressing a subject does nor free a court from enacted language, the absence of legislative history cannot do so. See Whitfield v. United States, 543 U.S. 209, 215-16, . . . (2005).
>
> . . . .
>
> The Supreme Court insists that statutes be enforced as written even when they seem mistaken or pointless–for it is exactly then that the temptation to substitute one's judgment for the legislature's is strongest. See, e.g., Dodd v. United States, 545 U.S. 353, . . . (2005) (the statute of limitations for collateral attacks on criminal convictions must be enforced as written even though time may expire before a challenge becomes

possible, and even though the possibility likely resulted from legislative oversight)[.] US v Logan, 453 F3d 804, 805-06 (7th Cir 2006). Thus, as the enacted text of the statute in question is unambiguous, it would be improper to consider legislative history in this case. See US v Rand, 482 F3d 943, 947 (7th Cir 2007).

Accordingly, the undisputed material facts establish that the statutory language unambiguously makes the employee contributions to ERIP and CRP wages on which income tax must be paid.

Plaintiff argues that "the employees' share of the tax assessed by the IRS was and is not due because any obligation that the University may have had to withhold tax was not precise but speculative." The court disagrees. The statutory language is unambiguous and the University's obligation to withhold taxes was precise and not speculative. Plaintiff argues that a Temporary Treasury Regulation effective November 16, 2004, stating that a salary reduction agreement includes a plan or arrangement "if the employee agrees as a condition of employment (whether such condition is set by statute, contract, or otherwise) to make a contribution that reduces his or her compensation," shows the IRS believed there was a need for clarification of the meaning of the statute. However, it is just as reasonable to infer that the Temporary Regulation was promulgated in response to misinterpretations such as plaintiff's in the case at bar, and not to any lack of clarity in the statute. In short, the court does not find plaintiff's argument persuasive, and finds that the undisputed material facts establish that plaintiff was obliged to withhold taxes.

Also, the failure to deposit was not due to reasonable cause. It was due to what appears at best to be willful blindness to the plain meaning of the governing statute. Therefore,

06 C 3452

undisputed material facts establish that a failure-to-deposit penalty is due.

Plaintiff also challenges the imposition of a failure-to-pay penalty. Plaintiff contends that because it did not withhold taxes on the employees' contributions to the purchase of the annuities, no failure-to-pay penalty is due on those amounts. See Rev Rul 75-191 CB 376. This much is correct. However, that leaves the employer's contributions to consider. The basis on which plaintiff challenges the failure-to-pay penalty on the employer contributions is the divisible tax doctrine–the doctrine that a taxpayer may pay only a portion of a contested tax prior to challenging it in court. However, it is one thing to say that a taxpayer need not pay the total tax in order to gain entry to the courthouse, and quite another to say that the taxpayer may escape the penalty for failure to timely pay the tax by filing a lawsuit. The authorities cited by plaintiff do not establish that plaintiff was not required to timely pay the tax in order to avoid a failure-to-pay penalty. Therefore, the undisputed material facts establish that plaintiff owes a failure-to-pay penalty.

**ORDERED:** Defendant's motion for partial summary judgment [28, 30] is granted. Plaintiff's motion for partial summary judgment [29] is denied.

ENTER:

*[signature: George W. Lindberg]*

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: August 21, 2007